Inocencia Vega, demandante y apelada, *v.* Antonio Ponce y Josefa Cruz Santiago, demandados y apelantes.

No. 3244.—*Visto:* Mayo 27, 1924. *Resuelto:* Marzo 5, 1925.

1. Legados—Género o Cantidad—Anotación.—Cuando un legatario de género o cantidad deja enteramente de tomar las medidas requeridas por los artículos 46 y 52 de la Ley Hipotecaria, no puede posiblemente surgir ningunos derechos a su favor.

2. Legados—Género o Cantidad—Anotación—Término para Hacerlo—Tercero.—Un legado de género o cantidad no puede perjudicar a tercero si no es anotado dentro de los 180 días siguientes a la muerte del testador, aún cuando se hubiere hecho mención del mismo en la inscripción de una finca después de dicho plazo.

3. Legados—Género o Cantidad—Anotación.—L. H. 29, 46 y 52.—Los artículos 46 y 52, y no el 29, de la Ley Hipotecaria, son aplicables a los legados de género o de cantidad.

Sentencia de *Angel Acosta,* J. (Mayagüez), declarando con lugar la demanda, con costas. *Revocada, y Desestimada la Demanda.*

*Pascasio Fajardo,* Abogado de la apelada; *Juan Alemany Sosa,* Abogado de los apelantes.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Esta es una acción en la cual la demandante trató de reclamar un legado de $1,000. Alegó ella que el legado era un gravamen sobre la finca de Julia Vélez de Vialís y por tanto un gravamen contra la propiedad de los demandados, que adquirieron dicha propiedad del albacea esposo de la demandante. La referida propiedad era un bien ganancial y por supuesto que por el trapaso el comprador adquirió todo derecho, título e interés del esposo en ella, ya fuere ganancial o de otra clase.

En su testamento Julia Vélez de Vialís legó la suma de
$1,000 a Inocencia Vega, que había de ser satisfecha a esta
última cuando llegara a su mayor edad. La testadora hizo
otros legados de pequeñas cantidades a otras personas, as-
cendiendo los legados en conjunto a la cantidad de $1,450.
El remanente de su propiedad la testadora lo dejó a su es-
poso, José E. Martínez y Martínez, que fué nombrado alba-
cea y a quien se concedió un término de cinco años para pa-
gar los otros legados. La testadora falleció en septiembre
7, 1915—dos meses después de otorgar su testamento. En
esa fecha Inocencia Vega tenía 18 años de edad, habiendo
nacido en junio 15, 1897. Según parece, la única finca que
poseía este matrimonio y que podría quedar gravada con el
legado era la propiedad que ahora se discute. Se traspasó
primero a favor de la Ana María Sugar Company y por ésta
a los demandados. La finca, después del fallecimiento de
la testadora, fué inscrita, a instancia de Ana María Sugar
Company, a nombre de José E. Martínez, el referido esposo,
y en dicha inscripción el registrador consignó que la expre-
sada finca quedaba afectada por y sujeta al pago de los lega-
dos. Una manifestación semejante fué arrastrada a las ins-
cripciones subsiguientes hechas a favor de los varios com-
pradores.

Además de un legado específico, la Ley Hipotecaria en
sus términos exige ciertas. formalidades que más adelante se
citarán, antes de que tal legado se convierta en un gravamen
sobre la propiedad inmueble. Este no es el caso en el cual
el conocimiento sólo impediría a un comprador de ser tenido
por tercero. El conocimiento positivo es una especie de im-
pedimento para negar derechos preexistentes, especialmente
si son derechos reales, pero en cuanto a un legado particular
para que pueda gravar una finca, el gravamen—así como un
embargo—debe primero establecerse. El derecho al legado
es preexistente. Para convertirlo en un gravamen debe se-
guirse la ley. De ahí que el mero hecho de hacer una men-

ción, a no ser que esté autorizada por la ley, no puede crear un gravamen.

La Ley Hipotecaria, en lo que respecta a legados, es como sigue:

"Art. 46.—El legatario que no tenga derecho, según las leyes, a promover el juicio de testamentaría, podrá pedir en cualquier tiempo anotación preventiva sobre la misma cosa legada si fuere determinada e inmueble.

"Si el legado no fuere de especie, podrá exigir el legatario la anotación de su valor sobre cualesquiera bienes raíces de la herencia, bastantes para cubrirlo, dentro de los ciento ochenta días siguientes a la muerte del testador.

"En uno y otro caso, se hará la anotación, presentando en el Registro el título en que se funde el derecho del legatario.

"El legatario de bienes inmuebles determinados o de créditos o pensiones consignados sobre ellos, no podrá constituir su anotación preventiva sino sobre los mismos bienes."

"Art. 52.—El legatario que no lo fuere de especie y dejare transcurrir el plazo señalado en el artículo 46 sin hacer uso de su derecho, sólo podrá exigir después la anotación preventiva sobre los bienes de la herencia que subsistan en poder del heredero; pero no surtirá efecto contra el que antes haya adquirido e inscrito algún derecho sobre los bienes hereditarios."

En el tomo 2 de Galindo y Escosura, Comentarios a la Legislación Hipotecaria de España, (art. 45) página 500, se dice lo siguiente:

" * * * Todos los legatarios pueden pedir anotación en cualquier tiempo; pero los efectos de ésta varían según el en que se pide y la clase de legatario que la pide.

"Siéndolo de cosa específica, pídala cuando la pida, conserva su dominio en toda su integridad; si no lo es de especie, puede también pedir en cualquier tiempo la anotación de su derecho, según expresa el art. 52; pero según cuando la pida, producirá diversos efectos. Si la ha solicitado dentro de los ciento ochenta días, puede hacerla sobre cualesquiera bienes de la herencia; si después, sobre los que quedaren; pero sus derechos se conservan, se modifican o se pierden, según los casos." ·

Y asimismo en la página 503 (artículo 50) se dice:

"El legatario que dejase transcurrir los ciento ochenta días siguientes a la muerte del testador sin anotar su derecho, sólo podrá exigir después la anotación preventiva sobre los bienes de la herencia que subsistiesen en poder del heredero, y se le preferirá en ellos a los acreedores que hubieran adquirido sus créditos después de la anotación; pero si aquel hubiera hipotecado los bienes de la herencia, la anotación que exija el legatario después de los ciento ochenta días, no perjudicará a los hipotecarios. No es esto decir que haya perdido por completo su derecho; le quedarán acciones personales contra el heredero, que realizará si éste posee otros bienes."

Similarmente, en el tomo 6 de Manresa, Comentarios al Código Civil Español, (artículo 886), página 716, aparece la siguiente cita:

"El legatario de *género o de cantidad* podrá exigir anotación del valor de su legado sobre cualesquiera bienes raíces de la herencia que no estén legados especialmente a otros, y sean bastantes a cubrirlo, aunque aparezcan ya anotados a favor de otro legatario de igual clase.

"Estas anotaciones pueden pedirse en cualquier tiempo; pero la ley distingue sus efectos, según que se pidan dentro de los ciento ochenta días siguientes a la muerte del testador, o después.

"Dentro de los ciento ochenta días el legatario elige, digámoslo así, los bienes que han de ser anotados entre los de la herencia. La anotación de preferencia, en cuanto al importe de los bienes anotados, a estos legatarios sobre los que no hicieron uso de su derecho en el mismo término, y si la herencia fué aceptada puramente, sobre los acreedores del heredero y sobre cualquiera otro que con posterioridad a la anotación adquiera algún derecho sobre los bienes anotados, si bien, como queda dicho, en cuanto al importe de los bienes, y no al valor del legado.

"Los legatarios que anoten dentro de los ciento ochenta días no tienen preferencia alguna entre sí.

"Después del plazo de los ciento ochenta días los legatarios de género o cantidad sólo pueden pedir anotación preventiva sobre los bienes que, según el Registro, subsistan en poder del heredero, de modo que si éste los hubiese enajenado o gravado en todo o en parte, el legatario no podría anotar más que los que quedasen al heredero, con los gravámenes que los afectaran. La anotación obtenida sólo da en este caso preferencia sobre cualquier acreedor del heredero que

con posterioridad adquiera algún derecho sobre los bienes anotados, pero no sobre ningún otro legatario, aunque por su parte no solicite la anotación.''

También en la página 149 del tomo 3 de la obra Morell, Comentarios a la Legislación Hipotecaria, (artículo 52), encontramos lo siguiente:

''1. *Relaciones entre estos legatarios y el heredero.*—Pasados los ciento ochenta días el heredero puede inscribir libremente a su favor los biénes de la herencia, y se inscriben sin dificultad cuantos actos ·de enajenación o gravamen hubiere realizado. El legatario sólo puede ya anotar los bienes que subsisten en poder del heredero, entendiéndose que no subsisten en su poder aquellos que hubiese transmitido con anterioridad, aunque la transmisión no resultase aun inscrita.

''2. *Relaciones de los legatarios con los terceros adquirentes de bienes o derechos reales.*—El art. 52 está bien claro. La anotación del legatario no surtirá efecto contra el que antes haya adquirido o inscrito algún derecho sobre los bienes hereditarios. Si ese derecho fué inscrito no procedería ya la anotación. Si no se halla aun inscrito, pero *se adquirió* con anterioridad, la anotación procede, pero es ineficaz; probada la adquisición anterior, la anotación debe can celarse.''

[1, 2] El apelante está dispuesto a admitir que las prescripciones de la Ley Hipotecaria no pueden observarse literalmente y que un menor no puede ser obligado a actuar hasta que tenga conocimiento positivo, por lo menos mientras es todavía un menor. Es un hecho establecido que dicha menor nada supo del legado hasta que llegó a su mayor edad, pero la prueba demuestra que ella no hizo la inscripción dentro de 180 días después de llegar a su mayoridad, o en alguna fecha posterior. El testamento disponía que el albacea pagara los legados en efectivo y la ignorancia de la· menor no puede afectar a los compradores por un término ilimitado. Nos inclinamos más bien al parecer de que después de 180 días cualquier acción que un legatario pueda tener es personalmente contra el albacea o los herederos. Si se establece una excepción en favor de un menor ésta· no

puede ir más allá del tiempo en que dicho menor llegó a ser un adulto, ó 180 días después.

La corte aparentemente se fundaba en el artículo 29 de la Ley Hipotecaria, que prescribe lo siguiente:

"El dominio o cualquier otro derecho real que se mencione expresamente en las inscripciones o anotaciones preventivas, aunque no esté consignado en el Registro por medio de una inscripción separada y especial, surtirá efecto contra tercero desde la fecha del asiento de presentación del título respectivo.

"Lo dispuesto en el párrafo anterior se entenderá sin perjuicio de la obligación de inscribir especialmente los referidos derechos, y de la responsabilidad en que pueda incurrir la persona que en casos determinados deba pedir la inscripción."

Por supuesto que un legado no es un derecho real anterior a la inscripción. ¿Lo convirtió en tal derecho real la mención? Oigamos lo que dicen los comentaristas:

" *   *   * El artículo 29 de la Ley se refiere únicamente al dominio y derechos reales, y no ha de extenderse a los que, no teniendo ese carácter, se hacen constar por cualquier causa en el Registro.

"Deben, por tanto, tenerse por no mencionados y sin ningún efecto con relación a tercero." 2 Galindo y Escosura, Comentarios a la Legislación Hipotecaria, (art. 29), pág. 323.

"En cuanto a las menciones de derechos personales, no puede haber duda alguna.

"El art. 29 se refiere sólo a la mención del dominio o de los derechos reales. La mención de derechos personales o de obligación no puede perjudicar a tercero. Sin embargo, si la falta de cumplimiento de la obligación consignada debiera producir la rescisión del acto o contrato inscrito, y así constase en la inscripción, ha de tenerse presente que, con arreglo al art. 37, la rescisión, si llegara a producirse, perjudicaría al tercero a quien se hubiese transmitido la finca o el derecho.

"La adjudicación de bienes determinados para pagos de deudas en una herencia, concurso o quiebra, no implica gravamen de naturaleza real a favor de los acreedores, sino sólo una obligación personal del adjudicatario que puede retener los bienes y pagar los créditos con metálico propio, a no ser que conste expresamente en la inscripción que las fincas quedan especialmente afectas al pago. Así se establece en el art. 45 de la Ley vigente, rectificando una extra-

viada interpretación del Tribunal Supremo.    Véase el comentario de dicho artículo.

"Cuando el derecho reservado en una escritura, es de naturaleza meramente personal, sólo produce efectos entre los otorgantes y sus sucesores a título universal, sin que afecte en ningún caso a la integridad del derecho real inscrito, por cuya razón la mención que de él se haga, no altera su naturaleza jurídica.   (Resolución de 4 de diciembre de 1897.)"    2 Morell, Comentarios a la Legislación Hipotecaria, págs. 572-3.

[3] Nos sentimos obligados a declarar que el artículo 29 no es aplicable a un caso de esta naturaleza.   Aún cuando se resolviese que el artículo 29 de la Ley Hipotecaria era aplicable y la actuación del albacea al inscribir el testamento y hacer que se hiciera una mención en el registro fuera equivalente a inscribir un derecho real allí, sin embargo, tal inscripción no eximía a la demandante de la necesidad en que estaba de hacer alguna gestión de conformidad con los artículos 46 y 52 de la Ley Hipotecaria.   El caso es análogo a otras anotaciones que no tienen el efecto de inscripciones hasta que el dueño del supuesto derecho real adopte alguna nueva gestión.

*Debe revocarse la sentencia apelada y desestimarse la demanda.*